**In re Bill DUNKLE and Judith K. Dunkle A/K/A Judy Dunkle, Debtors.**

No. 01–11581.

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 30, 2002.

---

Joseph Fornari, Esq., Pittsburgh, PA, for United States Trustee.

Gary V. Skiba, Esq., Erie, PA, trustee.

Bill Dunkle and Judith K. Dunkle, Kane, PA, Debtors, Pro Se.

## OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

### Facts

On August 9, 2001, Bill Dunkle and Judith K. Dunkle ("Debtors") filed, pro se, a voluntary Petition under Chapter 7 of the Bankruptcy Code. A review of the Petition reveals that R.L. McCubbins of 6811 North 33rd Street, Suite B, Phoenix, Arizona, 85017–1016, prepared the Petition and schedules as a bankruptcy petition preparer and was paid a fee of $195 for preparation of the forms. The schedules further revealed that Debtors selected exemptions under § 522(d), but did not claim the residence as exempt property in Schedule C, and therefore, it appeared that Debtors desired to have their residence sold by the Trustee and have the $30,000 equity distributed to creditors.

By Order dated August 22, 2001, R.L. McCubbins was directed to file a letter or memorandum explaining why the services of a scrivener in typing the bankruptcy forms warrant a charge of $195 and to explain why the within matter should not be referred to the United States Attorney for the failure of R.L. McCubbins to affix an appropriate social security number as required by the Official Bankruptcy Forms.[2]

The August 22, 2001 Order fixed a hearing for September 10, 2001 to determine whether Debtors intended to waive a potential exemption in their home, so as to benefit unsecured creditors; or whether they gave the wrong information to R.L. McCubbins; or whether R.L. McCubbins misrepresented the Debtors' desires in filling out the bankruptcy forms.

On September 7, 2001, two letters dated August 31, 2001 bearing the name DocuPro on the letterhead and signed by R.L. McCubbins were filed. The first letter states in its entirety:

I sincerely apologize for my failure to properly disclose my Social Security number on the bankruptcy forms I prepared for Mr. and Mrs. Dunkle. The failure was not intentional.

My son, Martin, and I both do bankruptcy paperwork preparation. During July, one of our computers failed and my son used my system to complete a set of bankruptcy forms he was preparing for a customer in another state. Before printing his set of forms, he changed the preparer information on the software program to reflect his name and Social Security number. After printing, he re-

---

1. The within Opinion constitutes our findings of fact and conclusions of law.

2. Upon further review, the Court finds that the original documents prepared by R.L. McCubbins appropriately disclosed the social security number. It is the policy of the Bankruptcy Clerk's Office to remove the original sheets which disclose the preparer's social security number from the file and store them in the vault while the case is pending to protect the petition preparer's right of privacy. The original sheets are replaced with copies with the social security number eradicated until the case is closed. The Court was unaware of this policy when it believed R.L. McCubbins had failed to appropriately disclose a social security number.

entered my name in the program, but apparently failed to re-enter my Social Security number, and I didn't catch the error.

To further compound the error on the Dunkle's paperwork, I apparently also failed to enter the debtor's home exemption at the time I entered the Schedule A information.

Because of the inconvenience to the Dunkles, I am refunding their preparer fee. Also, I mailed to them four revised copies of their Schedule C for them to file with the Court. An extra copy of the revised Schedule C is attached to this letter, as are copies of exemption information which was provided to the Dunkles with their original forms.

I sincerely apologize to the Court and to Mr. and Mrs. Dunkle for the inconvenience my inattention to detail has caused to all concerned.

In the second letter, R.L. McCubbins d/b/a DocuPro attempts to justify a fee of $195. R.L. McCubbins d/b/a DocuPro states that:

Logic and Webster's Dictionary suggest that the work of a scribe, being the basis of scrivener's fees, is simply a task of copying what someone else has previously written down. Whereas the work of a bankruptcy preparer, as defined under the bankruptcy code, entails a more thoughtful, informed approach in completing technical detailed forms from raw data provided by the would-be petitioner.

Mrs. Dunkle appeared by telephone at the hearing fixed for September 10. She stated that she learned of McCubbins via computer; that she paid McCubbins $195 which had since been refunded and that the main purpose of the bankruptcy filing was to protect the Debtors' residence.

By Order dated October 18, 2001, a further hearing was fixed for December 5, 2001. The October 18th Order provides:

The record in the above case indicates that R.L. McCubbins d/b/a DocuPro asserts and admits that the preparation of the within Debtors' bankruptcy Petition entailed "a more thoughtful, informed approach in completing technical detailed forms from raw data provided by the [Debtors]" rather than just providing typing services. (*See* August 31, 2001 Letter of R.L. McCubbins d/b/a DocuPro to the Court.) The preparation "for clients documents requiring familiarity with legal principals beyond the ken of the ordinary layman" constitutes the unauthorized practice of law under Pennsylvania law. *See In re Maloney,* 249 B.R. 71, 76 (M.D.Pa.2000) *citing Shortz v. Farrell,* 327 Pa. 81, 193 A. 20 (1937) and *In re Campanella,* 207 B.R. 435 (Bankr.E.D.Pa.1977 [1997]). It further appearing that R.L. McCubbins and R.L. McCubbins d/b/a Affordable Law, Inc. have been permanently enjoined from filing or preparing for filing any papers in the Bankruptcy Courts for the Western District of Kentucky and the Northern District of Texas, it is ORDERED that a hearing is fixed for December 5, 2001 at 9:30 a.m. in the Bankruptcy Courtroom, 717 State Street, 7th Floor, Erie, Pennsylvania, to consider the extent to which R.L. McCubbins d/b/a DocuPro shall be permanently enjoined from engaging in the unauthorized practice of law in Pennsylvania, and to consider the extent to which R.L. McCubbins d/b/a DocuPro has prepared the documents for the filing of other cases in Pennsylvania, and the amount of monetary sanction to be imposed for failure to comply with the requirements of 11 U.S.C. § 110. The entire day has been reserved on the Court's calendar.

It is FURTHER ORDERED that Bill Dunkle and Judith K. Dunkle appear in person for the scheduled hearing.

An evidentiary hearing was held on December 5, 2001. Mrs. Dunkle testified that she and her husband encountered financial difficulty. Her sister learned of DocuPro from a website on the computer. Debtors only knew the name DocuPro and were not aware that R.L. McCubbins was the actual preparer until the completed Petition arrived. DocuPro mailed the Debtors a questionnaire to complete. Debtors had questions when completing the questionnaire. They sent the questions by email to DocuPro and received answers in reply. The questionnaire was completed and returned to DocuPro with a fee of $195. Debtors were promised the documents for filing with the Bankruptcy Court in 6–9 weeks. Debtors wanted to file the bankruptcy to "put a hold on it before [their] house was lost." When they did not timely receive the documents for filing, they attempted unsuccessfully to contact DocuPro. Debtors never had any personal contact with R.L. McCubbins or anyone else in the DocuPro organization. They finally received the documents for filing 12 weeks after tendering the questionnaire and payment. DocuPro chose Chapter 7 for the Debtors. Debtors did not know the difference between the Chapters. Debtors did not elect one Chapter or another. They completed the questionnaire and received the Petition back from DocuPro and it was a Chapter 7 Petition.

The questionnaire asked whether the Debtors wanted to keep or return their residence. Debtors stated that their desire to keep their house was the only reason for a bankruptcy filing. The questionnaire asked for the value of the house which was determined by looking it up on the tax bill.[3]

Debtors completed a questionnaire. They did not complete any bankruptcy schedules. Debtors did not understand the meaning of basic bankruptcy terms that they would need to know in order to begin to complete the schedules.[4] When asked if she knew what real property was, Mrs. Dunkle responded that she "thinks it is the house, this isn't real property?" Mrs. Dunkle was asked, what is a secured claim to which she responded that a secured claim is "money charged for the value of my house." The questionnaire asked the value of the Debtor's house and the amount owed on a mortgage. DocuPro made the determination that the mortgageholder held a secured claim and determined that the creditor should be listed on Schedule D—Creditors Holding Secured Claims. Debtors had never seen Schedule D.

Debtors had also never seen Schedule C—Property Claimed as Exempt until the completed form was received from DocuPro. Debtors disclosed the property owned on a questionnaire. R.L. McCubbins d/b/a DocuPro, the Petition preparer, chose which property to claim as exempt and which code sections to specify for each exemption. Debtors were required to check off on the questionnaire the property that they want to keep. The only thing Debtors marked was the house-indicating that they didn't want to lose the house. When R.L. McCubbins d/b/a DocuPro prepared Schedule C, the house was not claimed as exempt. Only after the Court

---

3. The tax bill may not reflect the actual value of the residence, and that inquiry is left to the Trustee.

4. Mr. Dunkle did not participate in the process. Mrs. Dunkle completed all the forms and handled the entire process on behalf of the Debtors with Mr. Dunkle signing documents as necessary.

brought it to the attention of the parties did R.L. McCubbins d/b/a DocuPro prepare an Amended Schedule C for filing by the Debtors to claim an exemption in the residence.[5]

Schedule D–Creditors Holding Secured Claims-lists Aurora Loan Services as the holder of a secured claim against the Debtors' residence. Debtors did not decide that the mortgage held by Aurora Loan Services was a secured claim. R.L. McCubbins d/b/a DocuPro decided to enter the mortgage as a secured claim. Schedule D asks for the amount of claim without deducting value of collateral. Debtors do not know what that means. R.L. McCubbins d/b/a DocuPro determined the appropriate amount.

Schedule E requires a debtor to list priority claims. Debtors do not know what a priority claim is. R.L. McCubbins d/b/a DocuPro made the determination to check a box on Schedule E to indicate that Debtors have no priority claims.

Schedule G requires a debtor to check a box if debtor has no executory contracts or unexpired leases. Again, R.L. McCubbins d/b/a DocuPro determined to check the box.

Schedule H requires a box to be checked if Debtor has no co-debtors. Debtors do not recall being asked whether there were any co-debtors. R.L. McCubbins d/b/a DocuPro determined to check the box.

On the statement of financial affairs, a debtor is to list setoffs. Debtors do not know what a setoff is. R.L. McCubbins d/b/a DocuPro determined to state that there were none.

*Discussion*

11 U.S.C. § 110 was enacted "to address the proliferation of non-attorney bankruptcy petition preparers." *In re Moffett*, 263 B.R. 805, 811 (Bankr.W.D.Ky. 2001). "The statute sets standards for and limitations on these preparers to prevent them from providing legal advice and engaging in the unauthorized practice of law." *Id.* at 811–12 *citing* H.R. Rep. 103–834, 103rd Cong. (2nd Sess.1994), U.S.Code Cong. & Admin. News 1994, p. 3323. The Bankruptcy Court may enjoin the petition preparer from engaging in further violations of the statute, or may permanently enjoin a petition preparer from preparing any petitions in the future if the preparer has continually engaged in conduct in violation of the statute. 11 U.S.C. § 110(j).

We find that R.L. McCubbins d/b/a DocuPro has engaged in the unauthorized practice of law. The preparation "for clients documents requiring familiarity with legal principals beyond the ken of the ordinary layman" constitutes the unauthorized practice of law in Pennsylvania. *See In re Maloney*, 249 B.R. 71, 76 (M.D.Pa.2000) *citing Shortz v. Farrell*, 327 Pa. 81, 193 A. 20 (1937) and *In re Campanella*, 207 B.R. 435 (Bankr.E.D.Pa.1997). A petition preparer is only authorized to type information exactly as provided by potential debtors. *Moffett* at 814. R.L. McCubbins d/b/a DocuPro did far more. Without ever meeting or speaking personally with the Debtors, and limited solely to the Debtors' responses to a questionnaire, R.L. McCubbins d/b/a DocuPro classified Debtors' obligations as secured, priority, or unsecured on the Debtors' bankruptcy

---

**5.** This kind of error presents the Trustee with a dilemma. He is not the representative of the Debtors. When the Debtors made no claim of exemption for the residence, the Trustee was duty-bound to sell it. Yet, the Trustee could see that, if the exemption claim were properly made, it should be granted. This is not a matter of routine paperwork; it is a matter of the substantive and substantial rights of the Debtors and their creditors.

schedules. R.L. McCubbins d/b/a Docu-Pro selected which chapter of bankruptcy that the Debtors should elect. R.L. McCubbins d/b/a DocuPro inaccurately selected and classified Debtors' exemptions, and determined that Debtors had no executory contracts or co-debtors. The activities of R.L. McCubbins d/b/a DocuPro clearly constitute the unauthorized practice of law. 11 U.S.C. § 110(k) provides that activities that constitute the unauthorized practice of law are not permitted under § 110. The unauthorized practice of law constitutes a fraudulent, unfair or deceptive act within the context of 11 U.S.C. § 110(i)(1). *Moffett* at 813; *In re Gomez,* 259 B.R. 379, 386–88 (Bankr. D.Colo.2001); *In re Guttierez,* 248 B.R. 287, 294 (Bankr.W.D.Tex.2000).

 The Court further finds that R.L. McCubbins d/b/a DocuPro has continually engaged in such conduct. On March 17, 1995, in the case of *In re Lyvers,* 179 B.R. 837 (Bankr.W.D.Ky.1995), the Court stated that "[R. L.] McCubbins has continually engaged in conduct…which constitutes the unauthorized practice of law." *Id* at 842. That Court "permanently [enjoined] R.L. McCubbins from filing or preparing any papers in the Bankruptcy Court for the Western District of Kentucky." *Id.* The office of the United States Trustee reports that on October 19, 1999, the Bankruptcy Court for the Northern District of Texas permanently enjoined R.L. McCubbins from preparing or assisting in the preparation of bankruptcy petitions or documents, and from advertising his bankruptcy petition preparation services. Thus, it is clear that R.L. McCubbins has continually engaged in such conduct since at least 1995.

6. Disgorgement of the fee paid by Debtors is also an appropriate remedy, but need not be ordered as R.L. McCubbins d/b/a DocuPro

We will permanently enjoin R.L. McCubbins and DocuPro and any persons or entities acting in concert with them from filing or assisting any persons in filing bankruptcy cases, from charging any persons for assisting them in filing bankruptcy cases, and from advertising and marketing services in the Western District of Pennsylvania.[6]

has voluntarily returned the entire fee to the Debtors.